# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| STEVEN W. TABER, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 17-09005-MC-W-SWH |
| FORD MOTOR COMPANY, | ) |
| Defendant. | ) |

## ORDER

Pending before the Court is the motion of non-party Autoliv Asp, Inc.'s Motion to Quash Third-Party Subpoena. (Doc. #1)  On or about October 21, 2017, Autoliv Asp, Inc. (hereafter Autoliv) was served a subpoena duces tecum seeking the production of documents and deposition testimony for use in the case of Steven and Renee Taber v. Ford Motor Company, Case No. 16-CV-162-SWH pending in the Western District of Missouri. (Doc. #1-1)  The deposition was scheduled for Bingham Farms, Michigan and set forth ten areas of inquiry for which testimony from a representative of Autoliv was sought. (Doc. #1-1, at 4)  Additionally, plaintiffs sought production of four categories of documents. (Doc. #1-1 at 5)

On November 16, 2016, Autoliv filed a motion to quash in the United State District Court for the Eastern District of Michigan where the deposition of Autoliv was scheduled to be taken. (Doc. #1)  The Eastern District transferred the matter to this Court on March 14, 2017. (Doc. #7)

### I. BACKGROUND OF THE TABER LAWSUIT

On July 8, 2014, plaintiff Steven Taber was injured when his 1996 Ford Ranger was involved in an offset frontal impact with another vehicle. (Case No. 16-cv-00162-SWH, Doc. #43, at 1)  Plaintiffs thereafter sued Ford Motor Company for, *inter alia*, product liability. (Id., at

¶¶14-53) Specifically, plaintiffs argue that due to "defects in the body shell, driver's restraint system including the seatbelt, airbag and sensing system and associated component parts, [plaintiff] suffered <u>enhanced</u> injuries in the collision that he would not have otherwise suffered . . . ." (<u>Id.</u>, at ¶10)

Through discovery, plaintiffs sought information pertaining to "why the airbag did not deploy and whether the [Diagnostic Monitor] has stored fault codes." (Doc. #2, at 2) Defendant informed plaintiffs that documents relating to the Diagnostic Monitor (hereafter "DM") were in the possession of Autoliv. (Ex. #2-4, at 4-5; Ex. #2-5, at 4-5; Ex. #2-6, at 4-8; Ex. #2-7, at 2)

Autoliv is not a party to the instant action, but it is alleged that Autoliv came into possession of certain documents related to the DM for the 1996 Ford Ranger as part of a purchase agreement. (Doc. #1, at 2; Doc. #2, at 1; Doc. #2-2, at 1) Autoliv's counsel in correspondence to plaintiff's counsel stated that:

> Notwithstanding the invalidity of your subpoena, Autoliv is willing to continue to work with you and Ford Motor Company with respect to a 1996 Ford Ranger pickup truck. As Autoliv has advised you on several occasions, Autoliv did not supply the Diagnostic Monitor (DM) for the 1996 Ford Ranger. Rather, as you are well aware, the DM for the 1996 Ford Ranger was manufactured by Ford Electronics Lighting Division (Ford ELD). Later, Ford ELD was rolled into Visteon before ultimately sold. Autoliv purchased a portion of Visteon in 2002. As part of this acquisition, Autoliv came to be in possession of some documents applicable to the 1996 Ford Ranger.

(Doc. # 2-2 at 1)

## II. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3)(A) requires a court to quash or modify a subpoena which:

> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

2

>   (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>   (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). Third party subpoenas are "subject to the same discovery limitations as those set out in Rule 26." United States v. Blue Cross Blue Shield of Michigan, No. 10-CV-14155, 2012 WL 4513600, at *5 (E.D. Mich. Oct. 1, 2012). Rule 26, which allows for broad discovery, permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).

In determining whether a request is an undue burden, the Eastern District of Michigan has stated:

> "Undue burden" is not further defined by the rules, but generally a court must balance the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it. Non-party status is also relevant in determining whether the burden should be considered undue or excessive. However, a nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be allowed. "That person cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena." 9A Wright & Miller, Federal Practice and Procedure § 2463.1, p. 507. Relevancy is one factor used by courts to balance against the burden of production. The Court must weigh "the likely relevance of the requested material ... against the burden ... of producing the material." EEOC v. Ford Motor Credit Co., 26 F.3d 44, 47 (6th Cir.1994). However, the burden of demonstrating relevance is on the party seeking discovery.

Lowe v. Vadlamudi, No. 08-10269, 2012 WL 3887177, at *2 (E.D. Mich. Sept. 7, 2012) (citations omitted other than direct quotes).

### III. ANALYSIS

#### A. Fed.R. Civ. P. 30(b)(6) Deponent

Autoliv argues that the subpoena, which identifies ten areas of inquiry for a corporate representative of Autoliv, is overly broad and unduly burdensome. (Doc. #1, at 5) Attached to

3

the subpoena was the following description of the matters about which plaintiffs sought to inquire of the 30(b)(6) deponent:

> 1. A person with knowledge of crash event and fault code information which may be stored in Ford's Diagnostic Monitor (DM) which was involved in a crash event on July 8, 2014. For identification purposes a copy of the download attempt performed on September 9, 2016 is attached as Exhibit 1.
>
> 2. A person with knowledge of the categories of fault codes and crash event data which may be stored on the subject Diagnostic Monitor.
>
> 3. A person knowledgeable in the ability to transplant the computer chip from the subject Diagnostic Monitor to a functional Diagnostic Monitor for downloading of information.
>
> 4. A person knowledgeable in the translation tool for any data contained in the subject Diagnostic Monitor.
>
> 5. A person knowledgeable in the hardware, software and other equipment or tool which may be needed to download information contained in the subject Diagnostic Monitor.
>
> 6. A person knowledgeable in other instances where Autoliv has been able to download information from other Diagnostic Monitors bearing the same part number F67F- 14B215-AC as the subject Diagnostic Monitor.
>
> 7. A person knowledgeable in whether Autoliv has the ability to download data from the subject Ford Diagnostic Monitor.
>
> 8. A person knowledgeable in all communication between Autoliv and its representatives and Ford Motor Company and its representatives and attorneys concerning any issue with the subject Diagnostic Monitor and/or the part previously represented by Ford as a RCM.
>
> 9. A person knowledgeable in access and use of WERS, FMEA and DFMEA documents and things for the subject diagnostic monitor.
>
> 10. A person most knowledgeable concerning Ford's responses to Plaintiffs' request for production numbers (Exhibit C) 3, 4A, 4J, 4O, 4S, 4Q, 4B-E, 4G-I, 4K-M, 4R & 4T and 9.[1]

---

[1] The Court notes that the attachment to the subpoena attached as Autoliv's Exhibit A (doc. #1-1) to its motion differs from the attachments to the subpoena attached to Tabers' Exhibit 8 (doc. #2-

4

(Doc. #1-1, at 4 (Exhibit A))

Autoliv does not identify "the manner and extent of the burden" placed upon it by the subpoena. See Lowe, 2012 WL 3887177, at *2. Instead it argues that it has no knowledge of a number of the matters listed above and argues that it played no role in the design or development of the DM. (Doc. #1, at 5) Autoliv also responds that the Tabers have failed "to establish why a deposition, instead of just the production of responsive documents, is merited in this case." (Doc. #1, at 5)

While the Court is mindful of the burden placed on third parties responding to a subpoena, Autoliv has not provided a sufficient basis for quashing the subpoena in its entirety. Autoliv acknowledged that it purchased a company which was at one point part of Ford, the company that developed the DM. In fact, Autoliv states in its motion to quash that "[a]s part of the acquisition Autoliv came to be in possession of some of the documents applicable to the 1996 Ford Ranger as part of its acquisition of facilities." (Doc. #1, at 2) At the time of the purchase Autoliv was, or should have been aware, that it may be called upon to provide information about the DM. The briefing clearly shows that Autoliv has knowledge of the DM and has in fact offered to assist in attempting to retrieve information off the DM.[2] (Doc. #2-2 at 1-2)

As the Tabers point out, one of the key questions in this case is why the airbags did not deploy. The Tabers contend that the DM may contain information to assist in that determination. A thorough understanding of the DM is thus needed. Tabers have repeatedly asked Ford for

---

8). Autoliv's Exhibit A lists ten 30(b)(6) topics. (Doc. #1-1, at 4) The Tabers' Exhibit 8, however, only lists nine items on the list of 30(b)(6) topics and there are slight differences in topics 6, and 9 (compare doc. #1-1, at 4, with doc #2-8, at 5). Because Autoliv brings the instant motion, the Court assumes that the list of 30(b)(6) topics included as Autoliv's Exhibit A is the list delivered to Autoliv and to which Autoliv is seeking to quash.

[2] For example, Autoliv has offered to attempt to swap out the chip of the Taber DM and place it into an undamaged DM which might enable Autoliv to download the data stored in the module. (Doc. #2-2, at 1-2 )

5

information on the above-referenced topics and Ford has directed the Tabers to Autoliv. This Court, therefore, finds that the above matters listed as 1-7 and 9-10 are relevant to the instant case. Therefore, the motion to quash topic numbers 1 through 7 and 9 through 10 will be denied.

Topic number 8 of Exhibit A seeks communications between Autoliv and Ford concerning "all communications between Autoliv and its representative and Ford Motor Company and its representatives and attorneys concerning any issue with the subject Diagnostic Monitor and/or the part previously represented by Ford as a RCM." This request, particularly the reference to "any issue" does appear to be overlybroad. This Court will not speculate about what information relevant to their lawsuit the Tabers are seeking in topic 8 since the other nine areas of inquiry appear to be broad enough to enable plaintiffs to obtain all relevant information in the possession of Autoliv. Further, although no claim of privilege has been raised concerning the communication between counsel of Ford and Autoliv, plaintiffs have provided no explanation of why such communications would be relevant. If factual information concerning the DM was exchanged in any communications between Ford and Autoliv that information should be discovered through the areas of inquiry and documents subpoenaed for the deposition. Thus, the motion to quash will be granted as to Topic 8 of the subpoena duces tecum.

B.  <u>Request for Production of Documents</u>

Autoliv also asks this Court to quash some of the Tabers' document requests which were part of the subpoena. The Tabers have requested the following documents:

> 1. Native format copies of all communications including but not limited to correspondence, email, intranet notes, text messages to and from Ford Motor Company, its lawyers, representatives and agents concerning Taber v. Ford litigation and the subject Diagnostic Manual.

> 2. The instruction manual, hardware and software used to attempt the download of the subject Diagnostic Monitor on any date including September 9, 2016.

6

3. All information between Autoliv and Ford Motor Company, its lawyers, its department of design analysis relating to the identification of the subject diagnostic monitor as a restraint control module.

4. All documents and things in the care, custody or control of Autoliv relating to the design, development, FMEA, DFMEA, manufacture and service of the subject diagnostic monitor.

5. All documents and things in the care, custody and control of Autoliv responsive to Plaintiffs' requests for production numbers 3, 4A, 4J, 4O, 4S, 4Q, 4B-E, 4G-I, 4K-M, 4R & 4T and 9, as stated on Exhibit C.[3]

(Doc. #1-1, at 5 (Exhibit B))

Autoliv objects to request numbers 1 and 3, which Autoliv has deemed "litigation based discovery[.]" (Doc. #1, at 7) As stated earlier, the Tabers have not explained why inquiries into communications between Ford and Autoliv are relevant to the issue of what information or documents Autoliv has concerning the DM. Therefore, the motion to quash with regard to document request numbers 1 and 3 will be granted.

The remaining requests are relevant. Request numbers 2, 4 and 5 seek information relevant to an understanding of the DM, including its design, manufacturing, and use. Autoliv has not argued that request numbers 2 and 4 are irrelevant. Nor have they identified a specific manner in which those requests are burdensome. With regard to request number 5, Autoliv merely argues that it should not have to respond to requests that were propounded on Ford. Such an assertion ignores Ford's response to those requests, which directs the Tabers to seek such information from Autoliv. Autoliv has stated that it is "ready, willing and able to produce documents that may be responsive to Plaintiffs' subpoena." (Doc. #3, at 3) This Court finds that

---

[3] Like the 30(b)(6) topics, Autoliv's version of the Rule 34(c) Requests for Production (Exhibit B) (doc. #1-1, at 5) differs from Tabers' Exhibit 8 (doc. #2-8, at 6). Again, because Autoliv has moved to quash this Court will assume that the list of documents to be produced in Autoliv's Exhibit B is the pertinent document.

Autoliv has not met its burden of demonstrating that document request numbers 2, 4, and 5 are burdensome or overly broad. Therefore, the motion to quash will be denied as to these requests.

Autoliv's briefing also references a motion for a protective order. (Doc. #3, at 3) No such motion was transferred to this Court by the United States District Court for the Eastern District Michigan, and it is unclear whether Autoliv was actually referring to the motion to quash. If Autoliv is seeking a protective order to which the parties in the Taber lawsuit have been unable to agree, then that request will need to be submitted in writing to this Court.

IT IS THEREFORE

ORDERED that Autoliv ASP, Inc.'s Motion to Quash Third-Party Subpoena (doc. #1) is DENIED in part and GRANTED in part, consistent with the above analysis.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE